Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000410
18-DEC-2015
10:18 AM

NO. CAAP-11-0000410

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MATTHEW CLEMENT, Petitioner-Appellant, v.
STATE OF HAWAI'I, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(S.P.P. NO. 06-1-0035; CRIMINAL NO. 99-0376)

SUMMARY DISPOSITION ORDER
(By: Foley and Leonard, JJ.; and
Nakamura, Chief Judge, concurring)

Petitioner-Appellant Matthew Clement (**Clement**) appeals from the Circuit Court of the First Circuit's (**Circuit Court's**)[1] (1) April 14, 2011 Findings of Fact, Conclusions of Law and Order Denying Petitioner's Amended Motion to Compel DNA Testing of Remaining Fingernail Clippings from Eleanor Wimberly and to Compare and Compel DNA Samples from Matthew Clement and Duane Sato (**Order Denying DNA Testing**); and (2) January 18, 2012 Findings of Fact, Conclusions of Law, and Order Denying Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody (**Order Denying Second Rule 40 Petition**).

With respect to the Order Denying DNA Testing, Clement does not challenge the Circuit Court's Findings of Fact (**FOFs**) or Conclusions of Law (**COLs**) 1 and 2, but challenges COLs 3 through 7 and contends that: (1) the Circuit Court failed to provide him

---

[1] The Honorable Dexter D. Del Rosario presided.

the opportunity to exhaust state remedies as to DNA testing; and (2) the Circuit Court's denial of DNA testing was a violation of his due process rights.  With respect to the Order Denying Second Rule 40 Petition, Clement asserts that:  (3) the Hawaii Paroling Authority (**HPA**) capriciously and arbitrarily set Clement's minimum term of imprisonment; and (4) Clement was denied his sixth amendment confrontation rights when impermissible hearsay was used at his trial.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Clement's contentions as follows:

(1)  Pertaining to a state prisoner's filing of a writ of habeas corpus in the federal court, 28 U.S.C. § 2254(b) (2012) states, in relevant part:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or . . .

Regarding exhaustion of state remedies, the United States Supreme Court has held:

> [t]o provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted).

A claim that is fairly presented includes the federal nature of the claim, which is "the federal law basis for [the] claim in the state-court petition or brief" or "by simply labeling the claim 'federal.'" Id. at 32-33.  Clement has now raised a federal law claim for relief on his request for DNA testing by moving for post-conviction DNA testing and by alleging in his March 31, 2008 Amended Second Rule 40 Petition:

> TRIAL COUNSEL AND PRIOR RULE 40 COUNSEL FAILED TO CONDUCT FURTHER D.N.A. TESTING ON THE DECEDENT'S FINGERNAIL CLIPPINGS, AND COMPARE THE RESULTS TO DUANE SATO, AND TO PETITIONER VIOLATING PETITIONER'S 5TH AND 14TH AMENDMENT DUE PROCESS RIGHTS AND STATE STATUTORY RIGHTS.

Clement further contends that DNA testing in a post-conviction setting is a civil right pursuant to 42 U.S.C. § 1983 (2006). Clement's request for post-conviction DNA testing was denied in the Order Denying DNA Testing. This claim is raised on appeal and addressed herein.

(2) Clement argues that Hawaii Revised Statutes (**HRS**) § 844D-123 is unconstitutional because it denied him due process and challenges COLs 3 through 7 in the Order Denying DNA Testing. HRS § 844D-123 (2014) provides:

§ 844D-123 **Order for post-conviction DNA testing.**
(a) The court shall order testing after a hearing if it finds that:

(1) A reasonable probability exists that the defendant would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis, even if the defendant later pled guilty or no contest;

(2) Identity was or should have been an issue in the proceeding that led to the verdict or sentence;

(3) The evidence sought to be analyzed has been identified with particularity and still exists in a condition that permits DNA analysis; provided that questions as to the chain of custody of the evidence shall not constitute grounds to deny the motion if the testing itself can establish the integrity of the evidence;

(4) The evidence was not previously subjected to DNA analysis or was not subjected to analysis that can now resolve an issue not resolved by previous analysis; and

(5) The application for testing is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

(b) The court may order testing after a hearing if it finds that:

(1) A reasonable probability exists that DNA analysis of the evidence will produce results that would have led to a more favorable verdict or sentence for the defendant had the results been available at the proceeding leading to the verdict or sentence, even if the defendant pled guilty or no contest;

(2) The evidence sought to be analyzed has been identified with particularity and still exists in a condition that permits DNA analysis; provided that questions as to the chain of custody of the evidence shall not constitute grounds to deny the motion if the testing itself can establish the integrity of the evidence;

(3) The evidence was not previously subjected to DNA testing or was not subject to testing that can now resolve an issue not resolved by previous testing; and

3

(4)     The application for testing is made for the purpose of demonstrating that the defendant was guilty of a lesser offense or eligible for a more lenient sentence and not to unreasonably delay the execution of sentence or administration of justice.

(c)     If evidence had previously been subjected to DNA analysis, by either the prosecution or defense, the court may order the prosecution or defense to provide each party and the court with access to the laboratory reports prepared in connection with the DNA analysis, as well as the underlying data and laboratory notes. If DNA or other analysis of evidence was previously conducted by either the prosecution or defense without knowledge of the other party, all information relating to the testing shall be disclosed by the motion for analysis or response. If the court orders DNA analysis under this section, the court shall order the production to each party and the court of any laboratory reports prepared in connection with the DNA analysis and, in its discretion, may order production of the underlying data and laboratory notes.

The challenged COLs in the Order Denying DNA Testing state:

3.      As to HRS § 84[4]D-123(a)(1), Petitioner fails to show that the State would not have prosecuted Petitioner or that he would not have been convicted had exculpatory results been obtained through DNA analysis.

4.      As to HRS § 844D-123(b)(1), Petitioner fails to show that the DNA analysis would have led to a more favorable verdict had it been available at trial.

5.      Even assuming, _arguendo_, that Sato's DNA was found in Wimberly's fingernail clippings, this evidence would not rise to the level of exculpatory evidence. Based on the evidence adduced at trial, Sato was Wimberly's live-in boyfriend at the time of the murder. Given the nature of that relationship, there are various, non-criminal explanations for the presence of Sato's DNA under her fingernails.

6.      At trial Petitioner vigorously pursued his theory that Sato was responsible for the murder. The jury's verdict reflects the conclusion that the jury, as the trier of fact, considered and rejected Petitioner's theory of the case.

7.      As to HRS §§ 844D-123(a)(4) and (b)(3), the evidence Petitioner seeks to have analyzed was already subjected to DNA analysis. The results of the initial tests were inconclusive. Petitioner fails to produce any evidence that current DNA testing procedures would yield a different result.

Clement argues that he has been denied due process because, without the requested DNA evidence, he cannot meet the statutory requirements needed to obtain the requested DNA evidence, and cites _Skinner v. Switzer_, 562 U.S. 521 (2011), as

authority for his claim of constitutional infirmity. In addition, he contends that the Circuit Court's conclusion in COL 5 is speculative, trial counsel was ineffective in investigating the forensic evidence,[2] and that the expert testimony of Dr. Mark Hagadone and private detective Steven Perry should have persuaded the Circuit Court to grant him the requested relief.

First, we reject Clement's argument that Skinner holds that a due process violation occurs where the state court, in applying a state statute, requires a showing that the prisoner would not have been convicted if exculpatory results had been obtained through DNA testing or that the evidence was not previously tested through no fault of his own. Rather, Skinner holds that a convicted state prisoner may seek DNA testing of crime scene evidence in a civil rights action under 42 U.S.C. § 1983, and is not limited to proceeding by petition for writ of habeas corpus. Skinner, 562 U.S. at 525. Thus, Skinner does not support Clement's assertion of error.

In addition, contrary to Clement's contentions, the Circuit Court did not err in rejecting his argument that a reasonable probability exists that Clement would not have been prosecuted or convicted if DNA analysis found Sato's DNA in the victim's fingernail clippings. As the Circuit Court observed, in light of the fact that Sato was the victim's boyfriend at the time of her murder, there were various, non-criminal explanations for why Sato's DNA may be present under the victim's fingernails and, at trial, Clement vigorously pursued the defense that Sato, not Clement, shot the victim. Clement fails to acknowledge the State's references to the strong evidence that he was the perpetrator of this crime including, *inter alia*: the victim's reports the day before she was killed, to Sato that she saw Clement with a gun, and to a police officer that Clement "keeps coming around;" that Clement was seen outside of the victim's residence earlier in the day that she was killed; that Clement

---

[2]     Clement relatedly asserts that the prior attorneys representing him on direct appeal and in conjunction with his first Hawai'i Rules of Penal Procedure (HRPP) Rule 40 petition were also ineffective.

was seen by his friend with a .22 caliber revolver (the victim was shot 5 times with a .22 caliber weapon); that, upon execution of a search warrant, the victim's suitcase was recovered from Clement's residence, as well as a .22 caliber revolver; and ballistic evidence supported Clement's conviction. Clement's reference to a "scratch" in a photograph of Sato's face was raised at trial, but a police detective testified that the "marking" on Sato's face was merely dried blood (reportedly from Sato's attempt to resuscitate the victim) and not an injury. We conclude that the Circuit Court did not err in its application of the HRS § 844D-123 standard to this case to deny Clement's request for DNA testing.

(3) Clement raises numerous contentions in conjunction with his argument that HPA acted arbitrarily and capriciously as to his (original) minimum term of imprisonment. The relief requested by Clement was a new minimum term hearing comporting with the requirements of due process. However, as submitted by the State in conjunction with a May 14, 2014 motion to dismiss this issue for mootness, HPA held a new minimum term hearing for Clement on January 28, 2014, and thereafter, a new minimum term order was entered reducing Clement's minimum term from 40 years to 25 years and setting forth the "Level of Punishment" and "Significant factors identified in determining level of punishment."

Clement argues that the mootness doctrine should not be applied because many of the same issues here "are likely to recur" and as the Hawai'i Supreme Court held, in De La Garza v. State, 129 Hawai'i 429, 439, 441-42, 302 P.3d 697, 707, 709-10 (2013), the HPA is obligated to comply with the due process clause of the Hawai'i Constitution in determining a prisoner's minimum term and the convicted person has a due process right to, *inter alia*, "the potentially wide range of information being considered by the HPA." Thus, Clement argues, we need to now determine what protections and notices an inmate is entitled to. However, to the extent that Clement seeks case law generally explicating those rights, De La Garza, which was decided *before*

Clement's new (January 2014) HPA minimum term hearing, is binding authority. Clement does not assert, nor can we presume, that the HPA disregarded De La Garza. Thus, we conclude that the alleged infirmities in conjunction with Clement's original minimum term hearing are moot. As requested by Clement, we confirm that Clement is not precluded from filing an HRPP Rule 40 petition regarding any constitutional arguments and objections he may have regarding the January 28, 2014 HPA minimum term hearing and Clement cannot be construed as waiving any of those arguments on account of our ruling in this appeal.

(4) Clement argues that he was denied his sixth amendment rights to confront witnesses because impermissible hearsay was used at trial, citing Crawford v. Washington, 541 U.S. 36 (2004). Clement further argues that, although the hearing issue was previously raised and ruled upon, it was not waived because Crawford was not decided until after his direct appeal was final. Nevertheless, Crawford is not retroactively applicable to collaterally attack a conviction. See Whorton v. Bockting, 549 U.S. 406 (2007). Thus, Crawford cannot be applied to Clement's claim in his Rule 40 post-conviction collateral attack.

For these reasons, to the extent that Clement seeks relief related to the HPA's December 20, 2000 Notice and Order Fixing Minimum Term(s) of Imprisonment, Clement's appeal is dismissed as moot. Except with respect to the minimum term issue, the Circuit Court's April 14, 2011 Order Denying DNA

Testing and January 18, 2012 Order Denying Second Rule 40 Petition are affirmed.

DATED: Honolulu, Hawai'i, December 18, 2015.

On the briefs:

Richard T. Pafundi,
for Petitioner-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Respondent-Appellee.

Richard W. Stacey,
Diane K. Taira,
Deputy Attorneys General,
for Respondent-Appellee.

Associate Judge

Associate Judge

CONCURRING OPINION BY NAKAMURA, C.J.

I concur in the majority's opinion. I write separately to further explain my agreement with the majority's decision to affirm the Circuit Court's order denying the amended motion of Petitioner-Appellant Matthew Clement (Clement) to compel DNA testing of the victim's fingernail clippings (Order Denying DNA Testing). As the movant seeking post-conviction DNA testing pursuant to Hawaii Revised Statutes (HRS) Chapter 844D, part XI, Clement had the burden of demonstrating his entitlement to relief. Clement contends that he is entitled to DNA testing because the discovery of the DNA of Duante Sato (Sato), the victim's boyfriend, under the victim's fingernails would support Clement's theory that Sato (and not Clement) murdered the victim. It appears that if, prior to trial, Clement had obtained DNA analysis establishing that Sato's DNA was under the victim's fingernails, it would have provided support for Clement's theory of defense. However, in my view, Clement failed to meet his burden under HRS § 844D-123 (2014) of showing that a "reasonable probability exists" that he would not have been prosecuted or convicted if such DNA analysis had been obtained.

In the post-conviction proceedings, Respondent-Appellee State of Hawai'i (State) referred to evidence showing that Clement committed the murder and explained why Clement could not meet the requirements for post-conviction DNA testing under HRS § 844D-123. Clement did not refute the State's references to the evidence implicating him in the murder. Clement also did not present the trial transcripts to the Circuit Court or make such transcripts part of the record on appeal for our review. The Circuit Judge who decided the Order Denying DNA testing was the judge who presided over Clement's trial. Under these circumstances, I conclude that Clement failed to meet his burden of showing that a "reasonable probability exists" that he would not have been prosecuted or convicted if DNA analysis had been

obtained which revealed Sato's DNA under the victim's fingernails. The Circuit Court did not err in denying Clement's amended motion for DNA testing pursuant to HRS § 844D-123.

*Craig H. Nakamura*